UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICK W. McALPIN,


                                    Plaintiff,

                                                            DECISION AND ORDER

                                                            04-CV-6125L


                    v.

RLI INSURANCE COMPANY,


                                    Defendant.
_____


        Plaintiff, Patrick W. McAlpin, commenced this action in New York State Supreme Court,

Ontario County, in February 2004, seeking a declaration that defendant, RLI Insurance Co. ("RLI"),

is obligated to defend and indemnify him for any and all claims arising out of an automobile accident

("the accident") in which he was involved on October 10, 2002.  RLI removed the action to this

Court on March 30, 2004, based on diversity of citizenship under 28 U.S.C. § 1332.[1]

        Both sides have moved for summary judgment.  For the reasons that follow, plaintiff's

motion is granted, and defendant's motion is denied.

_____

        [1]The complaint also named two other defendants, Orlando O'Neill and Lori Moose.  By
consent of all parties, the Court issued an Order (Dkt. #38) on September 15, 2006, discontinuing
plaintiff's claims against O'Neill and Moose without prejudice.

**FACTUAL BACKGROUND**

The relevant facts are not in dispute.  At the time of the accident, McAlpin was covered by two separate insurance policies.  One of these, issued by Progressive Insurance Co. ("Progressive"), was a motor vehicle policy with an effective period of May 3, 2002 to November 3, 2002, providing up to $300,000 of liability coverage per occurrence.  Dkt. #54 Ex. A.  The other, issued by RLI, was a personal umbrella liability policy with an effective period of May 18, 2002 to May 18, 2003, providing up to $1,000,000 of coverage for claims in excess of any primary insurance held by McAlpin, such as his Progressive policy.  Dkt. #53 Ex. G.  McAlpin purchased both policies through the Hatch Leonard Naples, Inc. insurance agency ("Hatch Leonard").

On October 10, 2002, McAlpin was involved in a collision between the truck that he was driving and a motorcycle being ridden by Orlando O'Neill.  O'Neill was injured in the accident. McAlpin called Hatch Leonard to inform them of the accident, apparently from a cellular telephone while he was still at the accident scene.  *See* McAlpin Depo. Tr. (Dkt. #53 Ex. L) at 17.  McAlpin testified that either he or Hatch Leonard then called Progressive.  *Id.* at 18-19.  A Progressive representative contacted McAlpin within about a day and came to McAlpin's office to take photographs of his truck.  RLI was not contacted concerning the accident at this time.

In January 2003, O'Neill and his wife, Lori Moose, filed an action ("*O'Neill* action") against McAlpin in New York State Supreme Court, Ontario County, seeking damages for the injuries that O'Neill sustained in the accident and for loss of consortium.  The *ad damnum* clause in the complaint in the *O'Neill* action alleged $2.5 million in damages.

After being notified of the existence of the *O'Neill* action, Progressive agreed to defend McAlpin and to indemnify him up to the limits of the Progressive policy.[2]  McAlpin Decl. (Dkt. #68-1) ¶ 14; Michael Budd Decl. (Dkt. #54) ¶ 6.  On June 10, 2003, a Progressive representative, John Modoski, sent RLI a faxed copy of the October 10, 2002 police report concerning the accident between plaintiff and O'Neill.  Dkt. #60-2 at 3.  The cover sheet stated that this related to a "new loss," and asked RLI's "assigned rep" to call Modoski for details.  *Id.* at 2.

The following day, RLI's Casualty Claims Director, Frank C. White, Jr. sent a letter to McAlpin, stating that RLI "ha[d] received its first notice of loss by Orlando O'Neill on June 10, 2003."  Dkt. #53 Ex. O.   White asked McAlpin to submit to RLI "any copies of letters from [McAlpin's] primary personal insurance policy" concerning the loss.  White stated that until RLI received those materials and certain other documents, it could not take a definitive position on whether it would provide coverage, adding, "RLI will investigate this loss under a complete reservation of rights, including but not limited to late notice of a loss."  *Id.*

On July 28, 2003, White sent another letter to McAlpin stating that "RLI is denying coverage for violation of the policy conditions of late notice."  Dkt. #53 Ex. P.  Specifically, White quoted language in the RLI policy stating,

> In the event of an Occurrence which is likely to involve this policy, or if you or anyone else covered under the policy is sued in connection with an Injury which may be covered under this policy, you or they must do the following:
> 1.      Notify us or our agent as soon as possible;
> 2.      Provide us with any Suit papers and any other documents which will help us to defend you or them ... .

---

[2]It is not clear how Progressive received notice of the *O'Neill* action.

*Id.* White noted that the "date of loss" was October 10, 2002, the *O'Neill* action was commenced on January 11, 2003, RLI had not received its "first notice" until June 10, 2003, and RLI did not receive a "copy of the suit" until June 26. *Id.*

RLI did not participate in McAlpin's defense in the *O'Neill* action. In March 2007, a jury awarded the plaintiffs in that action nearly $850,000. Since Progressive has indicated that it will indemnify plaintiff up to the full amount of the Progressive policy–$300,000–plaintiff seeks in this action, in effect, an order directing RLI to indemnify plaintiff for the $550,000 balance of the *O'Neill* award.

## DISCUSSION

### A. Summary Judgment: General Principles

A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court determines which facts are material by considering the substantive law of the action, for only those "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden rests with the moving party to demonstrate the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) If the moving

party satisfies its burden, the non-moving party must provide "specific facts showing that there is a genuine issue for trial" in order to survive the motion for summary judgment.  Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 98-99 (2[d] Cir. 2003).

In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor.  *See Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 126 (2[d] Cir. 2004).  The Court must refrain from weighing the evidence, and restrict its inquiry to whether there are triable issues of material fact.  *See Anderson*, 477 U.S. at 249.

## B. Adequacy of Notice to RLI and RLI's Delay in Disclaiming

RLI's position in this action is straightforward.  It contends that because it did not receive notice of the relevant occurrence, *i.e.*, the *O'Neill* action, until June 10, 2003, and because it did not receive the *O'Neill* suit papers until June 26, 2003, plaintiff did not comply with the notice provisions of the RLI policy.  RLI was therefore entitled to disclaim coverage under the policy.

In response, plaintiff advances two arguments why notice to RLI was timely.  First, plaintiff asserts that Hatch Leonard had apparent authority to act as RLI's agent, so that the notice provided to Hatch Leonard on the day of the accident satisfied the RLI policy's notice requirement.  Second, plaintiff contends that even if notice was not given to RLI until Progressive informed RLI of the *O'Neill* action in June 2003, notice was still timely, because

plaintiff had no reason to believe that the *O'Neill* action would implicate the RLI policy at that time.

Under New York law, "an insured has a contractual obligation under the policy to provide timely notice of a claim ... ." *Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209, 214 (2[d] Cir. 2004). Consequently, "compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." *Commercial Union Insurance Co. v. International Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2[d] Cir. 1987); *see Security Mutual Insurance Co. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 440 (1972).

The defenses of late notice of claim or of occurrence are subject to waiver, however. In New York, an insurer seeking to "disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state" must provide the insured and the injured person or other claimant with written notice of its intent to disclaim "as soon as is reasonably possible ... ." N.Y. Ins. Law § 3420(d). "[A]n insurer cannot deny coverage if it delays unreasonably in issuing its denial, even if the insured has itself delayed unreasonably in notifying the insurer of the occurrence." *New York Univ. v. First Fin. Ins. Co.*, 322 F.3d 750, 753 n. 3 (2[d] Cir. 2003). *See also Allcity Ins. Co. v. Jimenez*, 78 N.Y.2d 1054, 1056 (1991) ("an insurer who fails to timely disclaim liability or deny coverage 'as soon as is reasonably possible,' when required by Insurance Law § 3420(d), waives its affirmative defense of late notice") (internal citations omitted)); *Schulman v. Indian Harbor Ins. Co.*, 40 A.D.3d 957, ___, 836 N.Y.S.2d 682, 684 (2[d] Dep't 2007) ("The failure of an insured to timely

notify the insurer of a claim does not excuse the insurer's failure to timely disclaim coverage").

"Under this statute, it is not necessary for an insured to show prejudice caused by an insurer's

unreasonable delay in disclaiming liability or denying coverage." *Commercial Union Ins. Co. v.*

*International Flavors & Fragrances, Inc.*, 822 F.2d 267, 274 n. 5 (2ᵈ Cir. 1987) (citing *Allstate*

*Ins. Co. v. Gross*, 27 N.Y.2d 263, 269 (1970)).  In addition, "[i]t is settled law that the

subdivision applies whether the policy is primary or excess." *Zappone v. Home Ins. Co.*, 55

N.Y.2d 131, 135 (1982).

There is no "fixed yardstick against which to measure the reasonableness, or

unreasonableness, of an insurer's delay ... ." *First Fin. Ins. Co. v. Jetco Contr. Corp.*, 1 N.Y.3d

64, 70 (2003).  "[M]ost often the question whether a notice of disclaimer has been sent 'as soon

as is reasonably possible' will be a question of fact, dependent on all of the circumstances of a

case that make it reasonable, or unreasonable, for an insurer to investigate coverage." *Id.*  The

court should "measure the reasonableness of the delay 'from the point in time when the insurer

first learns of the grounds for disclaimer of liability or denial of coverage.'" *U.S. Underwriters*

*Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 107 (2ᵈ Cir. 2004) (quoting *In re Arbitration*

*Between Allcity Ins. Co. and Jimenez*, 78 N.Y.2d 1054, 1056 (1991)).

"[W]here the grounds for disclaimer are not readily apparent, an insurer must be given

reasonable time to adequately investigate a claim in order to determine whether it wishes to

disclaim coverage, but the insurer also has an obligation to engage in a 'reasonably prompt,

thorough, and diligent investigation of the claim.'" *City Club Hotel*, 369 F.3d at 107 (quoting

*U.S. Underwriters Ins. Co. v. Roka, LLC*, No. 99-CIV-10136, 2000 WL 1473607, at * 5

(S.D.N.Y. 2000), and *In re Prudential Prop. & Cas. Ins. Co.*, 213 A.D.2d 408, 408 (2ᵈ Dept'

1995)).  Furthermore, "[a]n insurer is presumed to be aware of the untimeliness of notice as a

ground for disclaimer of liability upon first receiving such notice," *U.S. Underwriters Ins. Co. v.*

*A & D Maja Const., Inc.*, 160 F.Supp.2d 565, 570 (S.D.N.Y. 2001) (citing *Firemen's Fund Ins.*

*Co. of Newark v. Hopkins*, 88 N.Y.2d 836 (1996)), and the insurer bears the burden of justifying

any delay.  *City Club Hotel*, 369 F.3d at 107; *Schulman*, 40 A.D.3d at ___, 836 N.Y.S.2d at 684.

In the case at bar, plaintiff contends that the timeliness of the disclaimer should be

measured from June 10, 2003, when RLI received the notice from Progressive concerning the

*O'Neill* action.  Plaintiff argues that RLI's disclaimer was therefore untimely, because RLI did

not issue its letter disclaiming coverage until July 28, 2003, 48 days after it received that notice

from Progressive.

The evidence shows that RLI representative Frank White stated in his June 11, 2003 letter

to McAlpin that "RLI's coverage is to a certain extent impacted by the coverage position taken

by the primary personal policy," *i.e.*, Progressive.  Dkt. #53 Ex. O.  He added that "RLI's

coverage is also impacted by any other coverage you may have.  Therefore, RLI is requesting that

you sent [sic] to it any copies of letters from your primary personal insurance policy and any

other insurance policies ... ."  He stated that "[u]ntil RLI receives a copy of the relevant policy

from its records and RLI receives the above requested material, RLI can not give you a more

detailed analysis of its position."  *Id.*[3]

---

[3]The letter also stated that "RLI will investigate this loss under a complete reservation of
rights, including but not limited to late notice of a loss."  The effect of that reservation-of-rights
statement is discussed *infra*.

White was asked about these statements at his deposition.  Because it bears directly on the issue of the reasonableness of RLI's 48-day delay in issuing its disclaimer letter, White's testimony is worth quoting at some length.

When asked about his statement concerning RLI's coverage being "impacted by the coverage position taken by the primary" carrier, White replied that RLI's "policy includes exclusions and conditions that to some extent rely on the terms and positions taken by the primary ... ."  Dkt. #62 Ex. B at 94.  As an example, he noted that Part IV(A) of the RLI policy excludes coverage for "injury arising out of business pursuits or business property unless covered by the basic [*i.e.*, primary] policies."  Dkt. #53 Ex. G.  He added that there could also be issues concerning whether the policyholder had maintained sufficient primary coverage as required by the RLI policy.  Dkt. #62 Ex. B at 94-95.

White also stated, however, that Progressive "didn't provide [him] with a full copy of their file which [White] assumed would contain their policy and any coverage letters that they had done, and so [White] never determined that by the time [he] was aware of the facts that gave rise to the disclaimer of coverage."  Dkt. #62 Ex. B at 95.  Later in his testimony, White was asked, "You're saying you never obtained a policy from Progressive?," to which he replied, "Correct."  *Id.* at 99.

Plaintiff's attorney also asked White, "You knew on June 10th or you had a thought on June 10th, fair to say based on your June 11th letter, that there had been a notice problem, a late notice problem, is that correct?"  White responded, "Correct."  *Id.* at 101.  White was then asked how obtaining a copy of the Progressive policy, or any other policies that plaintiff held, would

have "helped [White] on the issue of late notice," to which he answered, "On the issue of late

notice the Progressive policy, I can't think of how that would have been relevant." *Id.* at 102.

White added that he had wanted copies of any other policies that plaintiff had in order to

learn whether there were any additional policies "between the primary policy ... and the RLI

personal umbrella policy." *Id.* Plaintiff's attorney then asked him, "irrespective of whether there

was a commercial policy in between, on June 10th, were you aware or at least there was

indication that this might be a late notice claim or a late notice issue?" White responded, "There

was indication that it might be, there was indication that it might not be." *Id.* at 103. Plaintiff's

attorney asked, "How was there an indication that it might not be?," to which White responded,

> The – Progressive's original notice to me refers to I believe a new claim. ... A new loss.
> And so I've got the date of loss versus our notice date of, October 10th of '02 through
> June 20th [sic] of '03, I've got Progressive saying it's a new loss and I've got a police
> report, and so there's an indication that maybe it's late notice, maybe it's not.

*Id.*

Plaintiff's attorney asked "what indicates that there's a date of accident other than

October 10th of 2002?," to which White responded, "There's nothing that indicates that there's a

date other than October 10th of 2002." *Id.* He added, though, that "just because the date of the

notice and the date of loss are separated by a certain period of time doesn't automatically make it

late notice. There is issues [sic] of when Mr. McAlpin knew of the loss." *Id.*

Plaintiff's attorney then asked White what he did "to investigate that aspect," *i.e.*, to

investigate the date on which McAlpin had learned of the loss. *Id.* at 103-04. White answered

that he "asked Progressive for its file" and "asked Mr. McAlpin for his other policy." *Id.* at 104.

White testified that he subsequently received some materials from Progressive on June 26

(apparently the *O'Neill* suit papers, *see* Dkt. #53 Ex. P), but nothing from McAlpin.  *Id.*

Plaintiff's attorney asked White why, if he had received nothing from plaintiff in response

to his request, he did not follow up with McAlpin after June 26.  White answered,

> Because the Progressive material showed me that if there was actually a policy in place
> for Mr. McAlpin on the date of the loss, which I still had not determined because I hadn't
> received a copy of our policy, the other issues were to a certain extent mooted by the late
> notice that was at that point obvious, but I still needed a policy in order to make sure that
> we provided coverage at all on the date of the loss and complete my coverage
> investigation.  I could have denied coverage and continued to ask Mr. McAlpin for
> information and continued to ask Progressive for information, but it's been my experience
> that once you deny coverage that is not a economical [sic] use of time.

*Id.* at 107.

Plaintiff's attorney replied, "So you're saying that as of June 26th you had enough

information to determine that you could deny based on late notice?"  White answered, "No.

Because I didn't have a policy and if there was no policy in effect on the date of loss, there would

be no reason to deny for late notice, you'd be denying for lack of a policy."  *Id.* at 108.[4]

Even drawing all reasonable inferences in RLI's favor, I fail to see how this evidence

could give rise to a factual issue as to the reasonableness of RLI's 48-day delay in disclaiming

coverage.  I also conclude that RLI's delay was unreasonable as a matter of law.

In *Jetco*, 1 N.Y.3d 64, the New York Court of Appeals addressed the reasonableness of

an insurer's delay of–coincidentally–48 days in disclaiming coverage.  The Court of Appeals for

the Second Circuit had certified to the New York Court of Appeals two questions:  first, whether

---

[4]White's statements that he "hadn't received a copy of our policy," and that he "didn't
have a policy" appear to refer to his not having received a copy of the RLI policy that was in
effect at the time of the accident until July 15, 2003, when a copy of the relevant RLI policy was
produced for him internally at RLI.  *See* Dkt. #62 Ex. B at 109-10.

"an insurer who has discovered grounds for denying coverage [may] wait to notify the insured of denial of coverage until after the insurer has conducted an investigation into alternate, third-party sources of insurance benefitting the insured, although the existence or non-existence of alternate insurance sources is not a factor in the insurer's decision to deny coverage"; and second, whether, "[i]f an investigation into alternate sources of insurance is not a proper basis for delayed notification under N.Y. Ins. Law § 3420(d), ... an unexcused delay in notification of 48 days [is] unreasonable as a matter of law under § 3420(d)."  *New York Univ. v. First Fin. Ins. Co.* 322 F.3d 750, 752 (2[d] Cir. 2003).

The New York Court of Appeals answered the first question in the negative, and the second in the affirmative.  1 N.Y.3d at 68.  With respect to the first question, the court stated that it could not "accept ... that delay simply to explore other sources of insurance for the policyholder–an excuse unrelated to the insurer's own decision to disclaim [which was based on the insured's late notice of occurrence]–is permissible."  *Id.* at 69.  With respect to the second question, the court began by stating that while it "appreciate[d] the desire for a fixed yardstick against which to measure the reasonableness, or unreasonableness, of an insurer's delay[,] ... most often the question whether a notice of disclaimer has been sent 'as soon as is reasonably possible' will be a question of fact, dependent on all of the circumstances of a case that make it reasonable, or unreasonable, for an insurer to investigate coverage."  *Id.* at 70.

The court also made clear, however, that not every case involving delayed disclaimer will necessarily present an issue of fact as to reasonableness.  Based on the facts before it, the court

concluded that the insurer's 48-day delay in disclaiming coverage was unreasonable as a matter of law.

In reaching that conclusion, the court noted that it had previously concluded that an unexplained delay of 62 days was unreasonable as a matter of law.  *Id.* at 70 (citing *Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028, 1029 (1979)).  Stating that it saw "no material difference between a delay that is *unexplained* and a delay that is *unexcused*, meaning the explanation is unsatisfactory," the court found that on the facts before it, "[t]he insurer's 48-day delay in giving written notice ... was unreasonable as a matter of law."  *Id.*

In my view, *Jetco* is directly on point, and is dispositive of the late-disclaimer issue in the case at bar.  Although White offered a number of reasons why, after receiving the June 10, 2003 fax from Progressive concerning the *O'Neill* action, he sought additional documents from Progressive and McAlpin, none of those reasons ultimately played *any* role in RLI's eventual decision to disclaim coverage on the ground of untimely notice.  In fact, some of the documents that White had requested–such as a copy of the Progressive policy, which White said might have "impacted" RLI's coverage–had not even been received by him at the time of RLI's July 28 disclaimer.

White also admitted that he knew on June 10 that "there had been ... a late notice problem," and he failed to articulate how additional documentation did, or could have shed any more light on that "problem."  He conceded, in fact, that the Progressive policy would *not* have been relevant to that issue.

White did suggest that there might have been an issue concerning when McAlpin first became aware of the loss, but he never explained why; it is hard to see how White could have thought that McAlpin might have been unaware of the loss on October 10, 2002, since the police report made clear that McAlpin was one of the two drivers involved in the accident, that McAlpin told the police officer that he had run over O'Neill and "thought he had hit [the] curb," and that McAlpin was issued a ticket for a violation of New York Vehicle and Traffic Law § 1140(a) (failure to yield the right of way).  Dkt. #60-2 at 3.  In any event, White admitted that he did virtually nothing to investigate plaintiff's awareness of the loss.

White also stated that when he received the *O'Neill* suit papers from Progressive on June 26, "the other issues were to a certain extent mooted by the late notice that was at that point obvious ... ."  Why the late notice was "obvious" on June 26, but not on June 10, is difficult to see, but even if it did not become "obvious" until then, there is no explanation why it still took RLI an additional month to disclaim coverage on July 28.[5]

---

[5]White did testify that the material sent to him by Progressive on June 26 revealed to him that *Progressive* was aware of the loss as far back as October 11, 2002, that Progressive had a copy of the *O'Neill* suit papers on January 13, 2003, and other information, mostly regarding Progressive's knowledge of the accident and the *O'Neill* action.  Dkt. #62 Ex. B at 116-18.  That mostly just confirmed what should have been apparent from the June 10 fax, however.  *See Olin Corp. v. Insurance Co. of North America*, No. 84CV1968, 2006 WL 509779, at *3-*4 (S.D.N.Y. Mar. 2, 2006) (stating that "[i]t is ... not necessary that an insurer have actual knowledge of every fact bearing upon a defense in order to waive it," and that certain information that the insurer had received "was sufficient to place the London Underwriters on at least constructive notice of a potential late notice defense.  The fact that evidence later emerged that may have lent additional support for that defense does not affect the London Underwriters' waiver").  In any event, even if the untimeliness of the notice of occurrence did not become clear until June 26, that does not explain why RLI waited another 32 days to notify McAlpin that it was denying coverage.

Despite his statement that the late notice was "obvious" on June 26, White answered "no" when asked whether, as of June 26, he had enough information to determine that RLI could disclaim coverage based on late notice. White's reasoning, however, was that he "didn't have a [copy of the RLI] policy and if there was no policy in effect on the date of loss, there would be no reason to deny for late notice, you'd be denying for lack of a policy." In other words, White suggested that in addition to late notice, there might have been an additional, more fundamental reason for denying coverage–the lack of a policy in effect on the date of the accident–and that, had he determined that there had been no valid policy in effect at the time of the loss, he would not have needed to base the disclaimer of coverage on late notice as well.

It is clear, however, that regardless of what White might have learned concerning the existence of a policy, RLI *could* have disclaimed coverage based on late notice no later than June 26, if not June 10, 2003. That White, for a while at least, attempted to determine whether there was an alternative basis for denying coverage does not alter the fact that he knew as of June 10 that there was a "late notice problem," which was confirmed when he received the *O'Neill* suit papers on June 26. It does not appear that any documents or information that White received after June 26 played any part in RLI's eventual decision to disclaim for untimely notice. It hardly seems reasonable for an insurer to delay giving its insured notice of whether it will provide coverage for a period of several weeks while the insurer attempts to discover whether some particular grounds exist for disclaiming coverage, only to disclaim coverage on a completely different ground, based on information that had been within the its possession throughout that period. *See Republic Franklin Ins. Co. v. Pistilli*, 16 A.D.3d 477, 479 (2[d] Dep't 2005) ("the

obligation to provide prompt notice under Insurance Law § 3420 (d) is triggered when the insurer

has a reasonable basis upon which to disclaim coverage, and cannot be delayed indefinitely until

all issues of fact regarding the insurer's coverage obligations have been resolved").

As stated, then, this case is on all fours with *Jetco*. As in that case, the insurer here

waited to notify the insured that it was denying coverage until after the insurer had conducted an

investigation into matters that ultimately played no role in the insurer's decision to deny

coverage. RLI's proffered excuse for its delay was thus "unrelated to [its] own decision to

disclaim ... ." *Jetco*, 1 N.Y.3d at 69. While RLI's delay was not "unexplained," then, it was

certainly "unexcused." As such, RLI's "48-day delay in giving written notice ... was

unreasonable as a matter of law." *Id.* at 70.[6]

That conclusion is not altered by the fact that White's June 11 letter to plaintiff stated that

"RLI will investigate this loss under a complete reservation of rights, including but not limited to

late notice of a loss." "A reservation of rights letter has no relevance to the question whether the

insurer has timely sent a notice of disclaimer of liability or denial of coverage." *Hartford Ins.*

---

[6]Even if RLI could be found not to have learned of the grounds for disclaimer until June 26, 2003, when White received a copy of the *O'Neill* suit papers and other documents from Progressive, I would still conclude that RLI's 32-day delay in giving notice of its denial of coverage was unreasonable as a matter of law. *See West 16th St. Tenants Corp. v. Public Serv. Mut. Ins. Co.*, 290 A.D.2d 278 (1st Dep't), (30 days unreasonable as a matter of law where insured's delay in notifying insurer of occurrence "was obvious" to insurer, and insurer "had no need to conduct an investigation before determining whether to disclaim"), *leave to appeal denied*, 98 N.Y.2d 605 (2002); *Campos v. Sarro*, 309 A.D.2d 888 (2d Dep't 2003) (39-day delay held unreasonable as a matter of law where explanation for delay after receipt of sufficient facts to disclaim was too vague); *Gagosian Gallery, Inc. v. Eurostruct, Inc.*, 10 Misc.3d 1074(A), 2005 WL 3695756, at *10 (Sup. Ct. Kings County 2005) ("the court finds that Inscorp's letter disclaiming coverage, which followed its receipt of notice by approximately 35 days, was ineffective as to" the insured, since delay was unexcused).

*Co. v. County of Nassau*, 46 N.Y.2d 1028, 1029 (1979) (citing *Allstate Ins. Co. v. Gross*, 27

N.Y.2d 263, 269 (1970)); *accord Tudor Ins. Co., Inc. v. McKenna Associates*, No. 01CIV 0115,

2005 WL 1138386, at *5 (S.D.N.Y. May 12, 2005); *Zappone*, 55 N.Y.2d at 135; *Pistilli*, 16

A.D.3d at 479.   A reservation-of-rights letter simply serves "to rebut a claim that the carrier

waived the right to disclaim by defending the insured." *New York Central Mut. Fire Ins. Co. v.*

*Hildreth*, 40 A.D.3d 602, ___ (2ᵈ Dep't 2007); *accord Gross*, 27 N.Y.2d at 269.

      Furthermore, the duty to disclaim promptly is imposed by statute:  § 3420(d) requires the

insurer to inform the insured of its disclaimer decision "as soon as is reasonably possible ... ."

An insurer should not be permitted to avoid this mandate simply by issuing a letter reserving its

right to disclaim at some point in the future, regardless of when or whether the insurer is in

possession of facts showing that there are grounds for disclaimer.  Since White was aware of

such facts from the June 10 fax, his purported reservation of RLI's rights was ineffective to avoid

a waiver of its right to disclaim based on late notice of occurrence.[7]

---

[7]My conclusion that RLI has waived its right to disclaim makes it unnecessary for me to decide whether plaintiff's delay in notifying RLI of the accident and the *O'Neill* action was reasonable, or to address plaintiff's argument that Hatch Leonard had apparent authority to act as RLI's agent, and that notice to Hatch Leonard on the day of the accident therefore satisfied plaintiff's notice requirements as to RLI.  I note, however, that there appear to be issues of fact as to both those issues.  *See U.S. Liability Ins. Co. v. Winchester Fine Arts Services, Inc.*, 337 F.Supp.2d 435, 443 (S.D.N.Y. 2004) ("The issue of whether a delay in notifying an insurance company regarding a potential claim is reasonable under the circumstances is generally determined by the factfinder"); *see, e.g.*, *Harbor Ins. Co. v. Trammell Crow Co., Inc.*, 854 F.2d 94, 98-99 (5ᵗʰ Cir. 1988) (evidence clearly suggested that, until jury in underlying slander action against insured (who had $500,000 in primary coverage) returned its verdict for nearly $2.5 million, a reasonably prudent person in insured's position could have concluded that the potential damages were not likely to involve excess policy; while excess carrier introduced evidence to suggest otherwise, court "[could ]not say that a genuine issue of material fact did not exist on this issue"); *Green Door Realty Corp. v. TIG Ins. Co.*, 329 F.3d 282, 289 (2ᵈ Cir. 2003) ("The

(continued...)

## CONCLUSION

Plaintiff's motion for summary judgment (Dkt. #52) is granted. Defendant's cross-motion for summary judgment (Dkt. #58) is denied. Defendant RLI Insurance Company is obligated to indemnify plaintiff for claims arising out of the automobile accident involving plaintiff that occurred on October 10, 2002.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      September 5, 2007.

---

[7](...continued)
existence of apparent authority is normally a question of fact, and therefore inappropriate for resolution on a motion for summary judgment"); *see, e.g., Levi v. Utica First Ins. Co.*, 12 A.D.3d 256, 257 (1st Dep't 2004) ("Material issues of fact preclude granting either Utica or plaintiffs summary judgment for breach of contract, which issues include but are not limited to whether [Utica's agent] had actual or apparent authority to bind Utica").